UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WINDY KJELDGAARD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. CV-12-00410-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 18, 22. Attorney Gary R. Penar represents Plaintiff; Special Assistant United States Attorney Jeffrey R. McClain represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

On June 25, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 2, 2008. Tr. 11; 149. Plaintiff reported that she could not work due to "right hip, lower back and nerve problems." Tr. 153. Plaintiff's claim was denied initially and on reconsideration, and she requested a hearing before an administrative law judge (ALJ). Tr. 64-111. A hearing was held on November 5, 2010, at which

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

vocational expert Daniel McKinney, Plaintiff's mother Julienne Grace Kelley, and Plaintiff, who was represented by counsel, testified. Tr. 38-60. ALJ James W. Sherry presided. Tr. 25. The ALJ denied benefits on January 6, 2011. Tr. 11-20. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here. At the time of the hearing, Plaintiff was 33 years old, 5 foot 8 inches, about 190 pounds, and married with three children ages fifteen, nine and seven. Tr. 31-32.

Plaintiff dropped out of school after the tenth grade, and earned a GED. Tr. 32-33. Plaintiff's past work includes insurance sales agent, customer service clerk, administrative clerk, nurse's assistant, telephone solicitor and cashier. Tr. 57. Plaintiff left her last job due to her back pain. Tr. 34-35.

Plaintiff testified that 75% of her day is spent lying on a couch, elevating her feet and alternating heating and icing. Tr. 46. Plaintiff said she is unable to stand long enough to complete household chores such as cleaning, and she can briefly stand to put frozen meals into the oven. Tr. 47. When she shops, she uses electronic scooters. Tr. 48.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a

preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971)*. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 2, 2008, the alleged onset date. Tr. 13. At step two, the ALJ found Plaintiff suffered from the severe impairments of status post right hip arthroscopy and osteoplasty with chronic right hip pain, nerve impingement, and other associated symptoms, right trochanteric bursitis, status post multiple nerve neoplasties, and major depressive disorder. Tr. 13. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 14. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work:

> The claimant cannot lift more than 10 pounds at a time. She can occasionally lift and carry articles such as docket files, ledgers, and small tools. She can stand and walk for about 2 hours in an 8-hour day and sot [sic] for about 6 hours in an 8-hour workday. She needs to be able to change position sit/stand every 30-60 minutes. The claimant is unlimited in pushing and pulling within the above weight restrictions. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She requires a handheld assistive device at all times while standing. The claimant should avoid concentrated exposure to unprotected heights and moving machinery. She can understand and perform some well-learned simple, routine, and repetitive tasks. She can adapt to simple changes. The claimant is capable of basic interaction with co-workers and the general public.

Tr. 15.

Based upon this RFC, the ALJ found that Plaintiff is able to perform past relevant work as a telephone solicitor, customer service clerk with sit/stand option and cashier with sit/stand option. Tr. 19. The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 19-20.

## ISSUES

Plaintiff contends that the ALJ erred by (1) finding Plaintiff had little

credibility; (2) rejecting Plaintiff's treating and examining medical providers; and (3) determining Plaintiff's RFC and therefore finding Plaintiff could perform past relevant work. ECF No. 19 at 16-30.

# DISCUSSION

## A. Credibility

Plaintiff contends that the ALJ erred by finding she had little credibility. ECF No. 19 at 22-25. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is "'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant has presented such evidence, and no evidence exists of malingering, then the ALJ must give "'specific, clear and convincing reasons'" in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (*quoting Lingenfelter,* 504 F.3d at 1036). At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" *Turner*, 613 F.3d at 1224 n.3 (*quoting Smolen*, 80 F.3d at 1284). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, inadequately explained failure to seek treatment, and whether the claimant's daily activities are inconsistent with the alleged symptoms. *See Tommasetti*, 533 F.3d at 1039; *Lingenfelter,* 504 F.3d at 1040. While a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant participates in everyday activities indicating

capacities that are transferable to a work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012), quoting *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir. 1981)).

The ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with her RFC assessment. Tr. 16. The ALJ noted that Plaintiff "sought and received a significant amount of treatment, much of it for pain, however there is a paucity of objective findings consistent with claimant's allegations." Tr. 16. The ALJ also noted that the record shows no instances of Plaintiff seeking mental health care or treatment. Tr. 16. The ALJ concluded that Plaintiff's failure to seek treatment "indicates her depressive symptoms are minimal enough to subordinate to her myriad physical complaints." Tr. 17.

In general, while considering Plaintiff's credibility, an ALJ appropriately considers an unexplained or inadequately explained failure to seek treatment. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects.") See also Social Security Ruling (SSR) 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment). "[A] claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Molina v. Astrue,* 674 F.3d 1104, 1113-14 (9th Cir. 2012) (*quoting Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

1. **Lack of mental health treatment**

Plaintiff contends that the ALJ erred by citing Plaintiff's failure to seek

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

psychological treatment for her depression, and cites *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. Cal. 1996). ECF No. 19 at 23. In *Van Nguyen,* the Ninth Circuit found that the ALJ erred by favoring a non-examining psychologist opinion over an examining psychologist. *Van Nguyen*, 100 F.3d at 1464. One of the reasons the ALJ in *Van Nguyen* offered for rejecting the examining opinion was that no evidence existed of findings or complaints about the existence of a mental disorder prior to the *Van Nguyen* claimant's exam that was conducted in connection with her request for benefits. *Id.* The Ninth Circuit noted that people afflicted with depression often fail to recognize they need help, and thus "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [an examining physician's] assessment of claimant's condition is inaccurate." *Id.*

     *Van Nguyen* is not directly applicable to the case at bar. Here, the ALJ relied upon Plaintiff's lack of treatment in order to assess whether her assertion that depression symptoms rendered her disabled were credible. Moreover, as the ALJ found in this case, while Plaintiff repeatedly sought and obtained treatment for her pain complaints, she did not specifically seek treatment for her depression symptoms. The record reveals that, at some point, Plaintiff did complain of depressive symptoms and she was prescribed anti-depressants, but no evidence indicates Plaintiff sought treatment specifically for depression.[1]

     It is apparent from the record that Plaintiff's symptoms of depression are secondary to her pain complaints. Based upon a review of the entire record, it was reasonable for the ALJ to conclude that Plaintiff's depressive symptoms are "minimal enough to subordinate to her myriad physical complaints." Tr. 17.

---

[1] At various times, Plaintiff's care providers prescribed antidepressants during appointments related to her hip and back pain. See Tr. 299; 425; 531.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

### 2. Improvement in symptoms

The ALJ also based his negative credibility finding upon the record that revealed Plaintiff's neuroplasties of 2008 and 2009 were "largely successful, and the claimant's pain was lessened and her hip function increased." Tr. 18. The ALJ cited records that revealed after the procedures, Plaintiff's hip was supple and flexible and that her pain was controlled with medication. Tr. 18.

An ALJ properly considers a claimant's improvement in symptoms in determining credibility. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Moreover, an ALJ properly considers whether medication effectively controls the plaintiff's symptoms. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled by medication are not deemed disabling).

Substantial evidence supports the ALJ's reasoning. For example, in early 2009, Plaintiff experienced "overall "improvement, with good strength and flexion, but she still experienced some pain. Tr. 301-04. With physical therapy, Plaintiff admitted she moved more easily, she eventually navigated stairs without help, had smoother gait, good extension and greater flexion, but she still needed some pain medication. Tr. 301; 303. However, the record revealed that Plaintiff reported that her pain was controlled with medication. Tr. 301; 307-08; 465; 470; 496; 520. As the ALJ pointed out, Dr. French believed Plaintiff was developing hyperalgesia. Tr. 17.

Finally, the ALJ noted that Plaintiff canceled a physical therapy appointment "and then appeared only intermittently, with the claimant ceasing treatment in March, 2010." Tr. 17. Later in the opinion, the ALJ commented, "[i]t seems likely that the claimant's hip could have become even stronger absent her self-declared 'sabbatical' from physical therapy." Tr. 18. The ALJ's reasoning is supported by

the record, which reveals that Plaintiff's condition improved when she participated in physical therapy. See Tr. 493-520. Thus, the ALJ's reason for finding Plaintiff had little credibility were specific, clear and convincing and supported by the record.

**B.    Medical Opinions**

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id*. However, "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.

**1.    Nathan Henry, Psy.D.**

Plaintiff argues that the ALJ erred by rejecting the opinion from Nathan Henry, Psy.D., because the opinion was based upon Plaintiff's self-report and was not upon objective testing or findings. ECF No. 19 at 18.

On October 17, 2009, Dr. Henry examined Plaintiff and produced a narrative report. Tr. 263-66. Dr. Henry interviewed Plaintiff and administered a mental status examination. Tr. 263. Dr. Henry diagnosed Plaintiff with major depressive disorder, single episode, moderate. Tr. 266. Dr. Henry opined that Plaintiff's "physical problems and associated chronic pain will likely pose a significant barrier to recovery." Tr. 266. Dr. Henry also opined: "Though physical limitations and chronic pain appear to be the primary barrier to occupational functioning, her depression symptoms will also likely limit her willingness and ability to seek and maintain employment. According to [Plaintiff's] report, she would likely have

difficulty maintaining adequate energy, concentration, and motivation to function adequately in most work environments." Tr. 266.

The ALJ gave Dr. Henry's opinion weight only to the extent his opinion consistent with the RFC. Tr. 18. The reasons the ALJ cited for giving little weight to Dr. Henry's opinion were that he based his conclusion upon Plaintiff's "self-report and not upon any objective testing or findings," and "he conducted only a single diagnostic interview." Tr. 18. The ALJ also noted that "it seems likely that the claimant's hip could have become even stronger absent her self-declared 'sabbatical' from physical therapy." Tr. 18.

Plaintiff argues that the ALJ erred by giving Dr. Henry's opinion limited weight because his reliance upon Plaintiff's self-report was appropriate and not a proper reason for discounting the opinion. ECF No. 19 at 18. However, Plaintiff's argument is not persuasive. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149. In this case, Dr. Henry qualified his opinion that Plaintiff may not be able to work by explicitly stating he relied upon Plaintiff's "report" that she would have difficulty maintaining energy, concentration and motivation to work. Tr. 266. Dr. Henry did not provide his own assessment, apart from quoting Plaintiff's self-assessment, regarding her ability sustain work. As such, the record supports the ALJ's finding.

Plaintiff's remaining challenge is equally unavailing. Plaintiff asserted that Dr. Henry did not indicate he needed additional exams with Plaintiff in order to form an opinion and the ALJ may not assume Dr. Henry lied in order to help Plaintiff collect benefits. ECF No. 19 at 19. No evidence supports this argument. The ALJ did not explicitly state or implicitly imply that Dr. Henry's opinion was biased or exaggerated, or that he was lying to assist Plaintiff. As a result, Plaintiff's claim on this issue fails.

In sum, the ALJ's reasons for discounting Dr. Henry's opinion were specific

and legitimate and supported by substantial evidence.

### 2.  Lynn Montgomery, ARNP

Plaintiff argues that the ALJ erred by rejecting a September 29, 2010, RFC form completed by Plaintiff's treating nurse practitioner, Lynn Montgomery, ARNP.  ECF No. 19 at 19-22.

On September 29, 2010, Ms. Montgomery completed a Physical Residual Functional Capacity form.  Tr. 556-59.  Ms. Montgomery described Plaintiff's clinical findings and objective signs as including decreased range of motion, limitations on rotation, limping, and muscle spasms.  Tr. 556.  She indicated that Plaintiff's treatment included pain medications that provided moderate improvement and had the side effects of drowsiness, memory loss and constipation.  Tr. 556.  Ms. Montgomery estimated that Plaintiff's experience of pain would constantly interfere with attention and concentration at work, and she opined that Plaintiff is incapable of working even low stress jobs.  Tr. 557.  Ms. Montgomery also opined that Plaintiff would miss work more than four days per month due to her symptoms.  Tr. 559.

The ALJ gave little weight to Ms. Montgomery's opinion because it was based upon Plaintiff's subjective pain complaints and it lacked objective findings.  Tr. 19.  The ALJ also found that Ms. Montgomery's opinion indicated Plaintiff is essentially unable to work and, thus, was contradicted by Dr. Barrett, the DDS evaluation, and the objective evidence as a whole.  Tr. 19.

Where a medical source's opinion is based largely on the Plaintiff's own subjective description of symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject that opinion.  *Fair v. Bowen*, 885 F.2d at 605.  Also, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.  *Batson*, 359 F.3d at 1195.  As the ALJ found, Ms. Montgomery's RFC form contains minimal objective findings.  See Tr. 556.

Moreover, Ms. Montgomery's treatment notes from 2008-09 reveal that Plaintiff's pain was manageable with medication, and she experienced noticeable improvement while attending physical therapy. Tr. 301-17.

Additionally, Ms. Montgomery's opinion that Plaintiff could not sustain work was contradicted by Dr. Barrett's opinion that Plaintiff could perform sedentary work. The ALJ is responsible for resolving conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. On August 14, 2009, Plaintiff's surgeon, Andrea J. Barrett. M.D., opined that Plaintiff's ongoing neuropathic pain would not prevent her from performing "sedentary work on a regular basis. She may have pain and occasional flares of her symptoms, but sedentary type work that allows for frequent changes in positions should not cause any damage." Tr. 421.

A treating source's opinion on an issue of a claimant's impairment should be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Moreover, the ALJ must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Lester*, 81 F.3d at 830. In this case, Dr. Barrett treated Plaintiff over a substantial period of time, performed procedures related to her hip and nerve compression problems, and reviewed tests results related to Plaintiff's hip and nerve condition. Tr. 372-490. Moreover, as an orthopedic surgeon, Dr. Barrett's opinion about the severity of Plaintiff's back impairment is entitled to greater weight than the opinion of a non-specialist. 20 C.F.R. § 404.1527(d)(5); *see Holohan v.*

*Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001)("[T]he regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (holding that the ALJ should have given greater weight to a physician with the expertise that as most relevant to the patient's allegedly disabling condition).  Because Nurse Montgomery's opinion that Plaintiff could not work was contradicted by Plaintiff's treating surgeon, the ALJ properly relied upon the contradictory opinion of the surgeon.  The ALJ's reasons for discounting Nurse Montgomery's opinion are valid and supported by the record.

C.     **Step Four**[2]

Plaintiff argues that the ALJ erred by failing to perform a functional analysis of the requirements of Plaintiff's past job, and that the ALJ's Step Four finding that Plaintiff can perform her past work is inconsistent with her RFC and the DOT. ECF No. 19 at 28.

At Step Four, the ALJ found Plaintiff was capable of performing her past

---

[2]Plaintiff argues in a separate section of her brief that the ALJ erred in crafting Plaintiff's RFC and by improperly weighing the evidence.  ECF No. 19 at 25-28.  Upon review, the court finds that the assertions in this argument are redundant with Plaintiff's arguments relating to the weighing of medical evidence and credibility.  At issue is not whether Plaintiff can come up with a different, rational interpretation of the evidence, but rather, whether the ALJ's interpretation of the evidence is rational and free of reversible legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (explaining that the ALJ's interpretation of the evidence will be upheld so it is rational, even if "the evidence is susceptible to more than one rational interpretation").  Upon review, the Plaintiff raises no new substantial issues in this section, and all the assertions are addressed elsewhere within this opinion.

work as a telephone solicitor, customer service clerk and cashier. Tr. 19. A claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ has an affirmative responsibility to ask whether a conflict exists between the testimony of a vocational expert and the DOT. SSR 00-04p; *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). In this case, the ALJ asked the vocational expert at the hearing if his testimony was consistent with the DOT:

> Q. Very well. Mr. McKinney, was your testimony consistent with the DOT, unless otherwise indicated?
>
> A. Yes, it was, Your Honor.
>
> Q. And are the DOT descriptions of the jobs you identified consistent with the way those jobs are actually performed today, at least in a material way?
>
> A. Yes, they are.

Tr. 62.

Also, an ALJ should obtain information about from the claimant about her past relevant work, with additional instructions regarding a claimant's mental limitations. SSR 82-62. The record contains Plaintiff's reports of her past relevant work. Tr. 162-74. Additionally, the vocational expert's testimony addressed this work. Tr. 57. Because Plaintiff did not establish any work-related limitations stemming from mental limitations, the ALJ was not required to further develop the demands of her past relevant work pertaining to such limitations. Moreover, the VE cited the Dictionary of Occupational Titles (DOT) in describing the demands

of Plaintiff's past relevant work. Tr. 57. As a result, the Plaintiff's claims that the ALJ's findings regarding Plaintiff's past work were insufficiently detailed, lack merit.

Finally, Plaintiff argues that the ALJ erred by finding that Plaintiff could perform her previous jobs, because Plaintiff's RFC limited her to simple, routine and repetitive tasks, and the jobs identified require reasoning level three, which is beyond simple, routine and repetitive tasks. ECF No. 19 at 28-30. The ALJ determined Plaintiff's RFC related to her mental capabilities: "She can understand and perform some well-learned simple, routine, and repetitive tasks. She can adapt to simple changes." Tr. 15.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. Part 404, subpart P, Appendix 1, Listing 12.00(C)(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). By contrast, the DOT employs a graduated, measured and finely tuned scale starting from the most mundane ("simple one-or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend the most abstruse classes of concepts" at level six).[3]

---

[3] A GED reasoning score of three requires that a worker: "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, Appendix C. A reasoning score of two requires a worker to: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from

The Ninth Circuit has not addressed this precise issue of whether an RFC that limits a claimant to "simple, routine, and repetitive tasks" is consistent with the ability to perform DOT-defined reasoning level three jobs. The other Circuits are divided regarding this issue. For example, the Tenth Circuit has found an apparent conflict between a job requiring reasoning level three and a RFC limitation to simple tasks. *See Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005). The Seventh and Eighth Circuits have found no conflict between a job requiring reasoning level three and a RFC limitation to simple work. *See Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (job level three reasoning was not inconsistent with claimant's ability to follow only simple, concrete instructions).

The court acknowledges the appeal of the Defendant's argument that the record could support a finding that in light of Plaintiff's education and skills, she was capable of performing jobs with reasoning level three. However, it is the role of the ALJ to resolve ambiguities and conflicts in the evidence. *Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). In this case, the ALJ assessed Plaintiff as limited to "well-learned simple, routine, and repetitive tasks." Tr. 15. The court does not find anything in the ALJ decision that would permit the court to draw a specific and legitimate inference that the Plaintiff could perform reasoning level three work. *See DOT App. C* ("Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.) Instead, Plaintiff's RFC is analogous to the definition of standardized situations." *Id.* Finally, a reasoning score of one requires a worker to: "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

reasoning level one work. *See DOT App. C.* ("Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.)

The RFC finding, along with the corresponding hypothetical posed to the VE, and the ALJ's conclusion that Plaintiff can perform reasoning level three work are fatally inconsistent. Accordingly, as argued by the Plaintiff, the ALJ erred in relying on the VE's testimony and the ALJ's step four decision lacks the support of substantial evidence. This error requires remand for further consideration of whether Plaintiff retains the capacity to make an adjustment to work that exists in significant levels in the national economy.

## CONCLUSION

For the reasons set forth above, this matter should be **REMANDED** for further administrative proceedings. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be CLOSED.

DATED March 28, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE